UNITED STATES v. PORTNEUF-MARSH VALLEY IRR. CO.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2334.

1. WATERS AND WATER COURSES (§ 242*)—IRRIGATION—RIGHT OF WAY—PUB-
LIC LAND—RESERVATION.

Act March 3, 1891, c. 561, § 18, 26 Stat. 1101 (U. S. Comp. St. 1901, p. 1570), granting rights of way through public lands and reservations of the United States to any canal or ditch company formed for irrigation to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals and 50 feet on each side of the marginal limits thereof, etc., constituted a grant of rights of way for such purposes through Indian reservations.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 147, 307; Dec. Dig. § 242.*]

2. WATERS AND WATER COURSES (§ 216*)—IRRIGATION—RIGHT OF WAY—STAT-
UTES—REPEAL—ABROGATION.

Act March 3, 1891, c. 561, § 18, 26 Stat. 1101 (U. S. Comp. St. 1901, p. 1570), granting to any canal or ditch company, for the purpose of irriga-
tion, rights of way through public lands and reservations for reservoir, canal, laterals, etc., was not superseded nor repealed by Act May 11, 1898, c. 292, 30 Stat. 404 (U. S. Comp. St. 1901, p. 1572), amending Act Jan. 21, 1895, c. 37, 28 Stat. 635 (U. S. Comp. St. 1901, p. 1572), entitled "An act to permit the use of the right of way through the public lands for tramroads, canals, and reservoirs and for other purposes," the benefits of which were limited to any citizen or association of citizens of the United States engaged in mining, quarrying, or cutting and manufactur-
ing timber, but contained no provision for rights of way or reservoirs for irrigation purposes, the ways provided for by such act being also con-
fined to the public lands of the United States not within the limits of any park, forest, military or Indian reservation.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 305; Dec. Dig. § 216.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. INDIANS (§ 27*) — INDIAN LANDS—RESERVATION — USE ·FOR IRRIGATION — DAMAGES—RECOVERY.

Since the manner, time, and conditions on which the Indians' right of occupancy of the lands of an Indian reservation may be extinguished are matters for the determination of the government, the Department of Justice may not maintain an action to recover damages for the appropriation of Indian reservation land for a reservoir by an irrigation corporation.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 19, 20; Dec. Dig. § 27.*]

In Error to the District Court of the United States for the Eastern Division of the District of Idaho; F. S. Dietrich, Judge.

Action by the United States against the Portneuf-Marsh Valley Irrigation Company. From a judgment in favor of defendant (205 Fed. 416), the United States brings error. Affirmed.

James L. McClear, U. S. Atty., of Cœur d'Alene, Idaho.

Edwin Snow, of Boise, Idaho, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

GILBERT, Circuit Judge. [1] The United States brought an action against the defendant in error, an irrigation company, alleging that the latter is unlawfully occupying, for the purposes of a reservoir for irrigation, 246.13 acres of land within the Ft. Hall Indian reservation, claiming authority to do so under the Act of Congress of March 3, 1891, granting rights of way for canals and reservoirs through the public lands and reservations of the United States, and the approval of its map of location by the Secretary of the Interior, given on June 27, 1908, and alleging that the irrigation company has constructed a reservoir on said land and impounded therein water to be used in irrigating arid lands in Bannock county, Idaho. For said alleged unlawful occupation of the land, the plaintiff demanded damages in the sum of $2,461.30. A general demurrer to the complaint was sustained by the court below, and, the plaintiff declining to amend, judgment was entered for the defendant.

Section 18 of the Act of March 3, 1891, c. 561, 26 Stat. 1101 (U. S. Comp. St. 1901, p. 1570), provides:

"That the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company formed for the purpose of irrigation and duly organized under the laws of any state or territory, which shall have filed, or may hereafter file with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof. * * * Provided, that no such right of way shall be so located as to interfere with the proper occupation by the government of any such reservation, and all maps of location shall be subject to the approval of the department of the government having jurisdiction of such reservation, and the privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective states or territories."

The plaintiff contends that in the words used in section 18, "right of way through the public lands and reservations of the United States

is hereby granted," an Indian reservation is not intended to be included; that the Act of March 3, 1891, has been superseded, or by necessary implication repealed, by the Act of May 11, 1898 (Act May 11, 1898, c. 292, 30 Stat. 404 [U. S. Comp. St. 1901, p. 1572]); that the lands in question were segregated and taken out of the category of public lands by the treaty of the Bannock and Shoshone Indians, of date July 3, 1868 (15 Stat. 673); and that, even though the Secretary had authority to grant the right of way under the Act of March 3, 1891, the land could not be taken from the Indians without just compensation.

We think that the grant of rights of way through the "public lands and reservations of the United States," in the Act of March 3, 1891, was intended to include Indian reservations. At the date of that act the Indian reservations were the only considerable reservations of the United States. Military reservations were comparatively small and compact, and were not contiguous to arid lands which might be reclaimed by irrigation. The forest reserve policy of the government had not then been inaugurated. That the United States had the power to grant rights of way over Indian reservations, notwithstanding its treaty obligations with the Indians, had already been firmly established. Buttz v. Northern Pacific Railroad, 119 U. S. 55, 7 Sup. Ct. 100, 30 L. Ed. 330. It was reaffirmed in Missouri, Kansas & Texas Ry. Co. v. Roberts, 152 U. S. 114, 14 Sup. Ct. 496, 38 L. Ed. 377. In the case last cited, although a treaty had been made between the United States and the Osage Indians, reserving to the latter the lands through which the railroad company was granted its right of way, the court said:

"The United States had the right to authorize the construction of the road of the Missouri, Kansas & Texas Railway Company through the reservation of the Osage Indians, and to grant absolutely the fee of the 200 feet as a right of way to the company. Though the lands of the Indians were reserved by treaty for their occupation, the fee was always under the control of the government."

That an Indian reservation is included in the term "reservations of the United States" is indicated by the decision in that case, as well as by Leavenworth, etc., R. Co. v. United States, 92 U. S. 733, 747 (23 L. Ed. 634) in which the court said:

"Every tract set apart for special uses is reserved to the government, to enable it to enforce them. There is no difference, in this respect, whether it be appropriated for Indian or for other purposes."

And referring to the lands reserved by treaty to the Osage Indians, the court observed:

"The treaty reserved them as much to one as to the other of the contracting parties. Both were interested therein and had title thereto. In one sense they were reserved to the Indians; but, in another and broader sense, to the United States for the use of the Indians."

In the case of Rio Verde Canal Co., 27 Land Dec. Dept. Int. 421, Mr. Secretary Bliss in his opinion said:

"The provisions of section 18, Act of Congress of March 3, 1891, granting the right of way through the public lands and reservations of the United States for irrigation purposes, include Indian reservations, subject to the con-

dition that the location and construction of the ditch or canal shall not interfere with the proper occupation of such reservations by the government for Indian purposes and uses. * * * There is no reason apparent why such reservation should not be subject to the grant of the right of way as any other reservation, and the executive department having jurisdiction of such reservation will determine whether it can be so located, and will withhold or give its approval accordingly."

The intention of Congress is further indicated by the language of the Act of February 15, 1901, 31 Stat. 790, authorizing the Secretary of the Interior to permit the use of rights of way through the "public lands, forest and other reservations of the United States," for electrical plants, canal ditches, and reservoirs used to promote irrigation, with the proviso that such permit shall be allowed within or through any of said parks or any forest or military, Indian, or other reservation only upon the approval of the officers of the department under whose supervision such park or reservation falls. It is true that the licenses authorized to be granted under that act gave no permanent rights, but were made revocable by the Secretary of the Interior; but that fact does not render the act the less instructive as indicating the attitude of Congress toward the question of the grant of rights of way over Indian reservations.

[2] Nor do we think that the Act of May 11, 1898 (30 Stat. 404) was intended to supersede or repeal by implication the act of 1891. It is an amendment to the Act of January 21, 1895, c. 37, 28 Stat. 635 (U. S. Comp. St. 1901, p. 1572), which was entitled "An act to permit the use of the right of way through the public lands for tramroads, canals, and reservoirs, and for other purposes." The benefits of the act of 1895 were limited to "any citizen' or any association of citizens of the United States engaged in the business of mining or quarrying or of cutting timber and manufacturing timber." The act contained no provision for rights of way or reservoirs for irrigation purposes, and the rights of way were confined to the public lands of the United States, "not within the limits of any park, forest, military or Indian reservation." Section 1 of the amendment of 1898 adds to the act of 1895 authority to the Secretary of the Interior "to permit the use of right of way upon the public lands of the United States, not within limits of any park, forest, military or Indian reservations, for tramways, canals, or reservoirs, to the extent of the ground occupied by the water of the canals and reservoirs, and fifty feet on each side of the marginal limits thereof, or fifty feet on each side of the center line of the tramroad, by any citizen or association of citizens of the United States, for the purposes of furnishing water for domestic, public, and other beneficial uses." Section 2 provides:

"That the rights of way for ditches, canals, or reservoirs heretofore or hereafter approved under the provisions of sections eighteen, nineteen, twenty, and twenty-one of the act entitled 'An act to repeal timber culture laws, and for other purposes,' approved March third, eighteen hundred and ninety-one, may be used for purposes of a public nature; and said rights of way may be used for purposes of water transportation, for domestic purposes, or for the development of power, as subsidiary to the main purpose of irrigation."

While it might be said that the language of the first section of the act of 1898 is sufficiently broad to include rights of way for the use

of water for irrigation purposes, and to show the intention of Congress that such rights of way should be limited to public lands other than reservations, the second section indicates that there was no intention to supersede the act of 1891, for it recognizes the validity not only of the rights of way that had been approved under the act of March 3, 1891, but of those that thereafter might be approved, and provides that the same may be used for public purposes, for water transportation, and for the development of power as subsidiary to the main purpose of irrigation. In other words, that section adds to the uses for which rights of way had been granted by the prior act, or which might thereafter be granted under its terms, and it shows that there was no intention on the part of Congress to retract the authority that had been conferred by that act to grant rights of way over reservations of the United States. It must be assumed also that the language of that section was adopted with full knowledge of the construction which had been placed upon the act of 1891 by the officers of the Land Department.

[3] But if it were true, as contended by the plaintiff, that the land in controversy is, by treaty, guaranteed to the Indians, and that the Secretary of the Interior had no authority to permit the defendant to use the same for reservoir purposes, the complaint would still be subject to demurrer, for there would remain no ground on which the plaintiff could, in this action, recover compensation for such use thereof, since the Department of Justice has no greater authority than has the Interior Department to legalize such use or to divest the Indians of their land, no authority to do so, and no authority to bring the action having been conferred by Congress, and there being no theory in law upon which compensation may be awarded by the court. In Missouri, Kansas & Texas Ry. Co. v. Roberts, cited above, it was held that the manner, time, and conditions on which the Indians' right of occupancy of the lands of an Indian reservation should be extinguished were "matters for the determination of the government."

The judgment is affirmed.